UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NICOLE LAWTONE-BOWLES,

                           Plaintiff,

            -against-

THE CITY OF NEW YORK,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

17cv8024

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Nicole Lawtone-Bowles brings this pro se employment discrimination action against the City of New York (the "City") under various federal, state, and local civil rights statutes. She alleges that the Department of Homeless Services ("DHS") subjected her to discrimination, a hostile work environment, and retaliation based on her gender, race, and disability. She also claims that DHS failed to accommodate her disability. The City moves to dismiss the Second Amended Complaint (the "Complaint") for failure to state a claim under Rule 12(b)(6). For the reasons that follow, the City's motion is granted in part and denied in part.

BACKGROUND

        The allegations in the Complaint are presumed true on this motion. This Court "may [also] consider the allegations contained in a pro se plaintiff['s] memorandum of law, where they are consistent with those in the complaint." Coakley v. 42nd Pct. Case 458, 2009 WL 3095529, at *3 (S.D.N.Y. Sept. 28, 2009).

        Lawtone-Bowles, who self-identifies as American-Indian, is employed as a DHS motor vehicle operator. (Second Am. Compl., ECF No. 29 ("Compl.") ¶ 1.) In September 2014, Lawtone-Bowles shattered both of her kneecaps in an automobile accident. Thereafter,

she went on medical leave from her job at DHS's Prevention Assistance and Temporary Housing Office ("PATH") in the Bronx. (Compl. ¶ 10.)

In March 2015, Lawtone-Bowles asked to return to DHS on "light duty." Specifically, she claimed she could not drive certain types of commercial trucks or buses, squat or lift anything weighing more than twenty pounds, or travel for long hours. (Compl. ¶ 10.) DHS rejected her request because "light duty" was not available for her position as a motor vehicle operator. (Compl. ¶ 13.) After she submitted a doctor's note, DHS allowed her to return to work on June 2, 2015 and transferred her to a Brooklyn facility. (Compl. ¶¶ 15, 17.) Lawtone-Bowles's commute to the Brooklyn job site interfered with her physical therapy appointments, a concern she relayed to DHS. (Compl. ¶¶ 18–19.)

During her six weeks in Brooklyn, Lawtone-Bowles alleges that her supervisor made inappropriate remarks, referring to her as a "cabbage patch baby" and asking her to call him "big daddy." (Compl. ¶ 23.) He also questioned her disability, claimed he had no knowledge of any requested accommodations, and assigned her to drive a van which she maintains she could not operate. (Compl. ¶¶ 21–23.) On June 24, 2015, Lawtone-Bowles filed complaints about her treatment with the Equal Employment Opportunity Commission (EEOC) and the State Division of Human Rights. (Compl. ¶¶ 24–25.)

On July 14, 2015, DHS transferred her back to PATH in the Bronx. (Compl. ¶ 26.) After she provided another doctor's note, DHS permitted her to resume working on August 1, 2015. (Compl. ¶¶ 27–30.) She alleges that her PATH supervisor and co-workers harassed her for being "a woman, obese, and disabled," (Compl. ¶¶ 31, 37–39), and that her supervisor characterized her as a "nasty woman," (Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 39 ("Pl.'s Resp."), at 5.). Lawtone-Bowles also claims that she was assigned to drive long

distances that aggravated her knee injury. (Compl. ¶¶ 35–36.) In March 2018, after another medical leave of absence, she returned to PATH and DHS approved her request to drive only certain vehicles for shorter distances. (Pl.'s Letter to the Court, ECF No. 29 ("Pl.'s Letter").)

Lawtone-Bowles also alleges that DHS disciplined her differently from her co-workers after various workplace incidents. Specifically, DHS personnel brought internal charges against her for: (1) an August 2016 verbal altercation with an unruly passenger; (2) a September 2017 episode where she nearly hit a DHS police officer with her van, prompting him to call her a "black bitch"; and (3) other "minor infractions." (Compl. ¶¶ 41, 45.) Lawtone-Bowles avers that she was suspended without pay for some of these incidents. (Pl.'s Resp. at 1.) Finally, Lawtone-Bowles claims that DHS did not promote her to the position of motor vehicle supervisor because "no one likes her." (Compl. ¶ 50.)

Lawtone-Bowles filed several complaints for gender and disability discrimination with the EEOC in September and October of 2017. (Pl.'s Am. Compl., ECF No. 20, at 12, 25, 31.) Right-to-sue letters were issued, and Lawtone-Bowles commenced this action on October 18, 2017. At the initial pre-trial conference on February 9, 2018, this Court raised certain deficiencies in the Complaint, as highlighted in the City's request for leave to file a motion to dismiss. (ECF No. 11.) After Lawtone-Bowles interposed an amended complaint, the City reiterated its intention to file a motion to dismiss. In response, Lawtone-Bowles amended her complaint again.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A pro se plaintiff's complaint must be construed liberally with "special solicitude" to raise the "strongest [claims] that [it] suggest[s]." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006). However, this special solicitude does not minimize the basic plausibility requirement. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).[1]

DISCUSSION

The Complaint pleads the following claims: (1) discrimination based on gender, race, and disability under Title VII, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (2) hostile work environment based on gender, race, and disability under the same statutes; (3) retaliation under the same statutes; (4) failure to accommodate under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL; and (5) race discrimination under 42 U.S.C. § 1981.

I.  Statutes of Limitations

Title VII and the ADA both require a plaintiff to bring a complaint of workplace discrimination to the EEOC within 300 days of an incident's occurrence, and then to file a related lawsuit within 90 days of receiving a notice of right to sue from the EEOC. Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 38 (2d Cir. 2011). Lawtone-Bowles's earliest relevant EEOC complaint was filed on September 7, 2017. Accordingly, any claims

---

[1] The City submitted internal DHS emails in support of its motion to dismiss and provided notice to Lawtone-Bowles under Local Rule 12.1 that if the Court considered the documents, it may convert the Rule 12(b)(6) motion into one for summary judgment. (ECF No. 38.) This Court declines the City's invitation to convert this motion into one for summary judgment because the record is incomplete.

4

arising from discrete acts predating November 11, 2016 are time-barred under those statutes. Similarly, the Rehabilitation Act, NYSHRL, and NYCHRL all impose a three-year statute of limitations, barring claims which accrued prior to October 18, 2014. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (NYSHRL and NYCHRL); M.D. v. Southington Bd. of Educ., 334 F.3d 217, 224 (2d Cir. 2003) (Rehabilitation Act).

II.     Discrimination Claims

To sustain a viable discrimination claim under Title VII or the NYSHRL, a plaintiff must plausibly allege that "(1) the employer took adverse action against [her], and (2) [her race or sex] was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). In the context of a disability discrimination claim, a plaintiff must allege:

> [1] that [her] employer is subject to [the ADA and Rehabilitation Act]; [2] that [she] is disabled within the meaning of the [statutes] or perceived to be so by [her] employer; [3] that [she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and [4] that [she] suffered an adverse employment action because of [her] disability.

Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

An "adverse employment action" is "a materially adverse change in the terms and conditions of employment . . ., one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012). This claim does not implicate Lawtone-Bowles's transfer to Brooklyn because a "purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 204–05 (2d Cir. 2006). As for Lawtone-Bowles's disciplinary charges and DHS's failure to promote her to a supervisory position, she pleads no facts suggesting that these

5

measures had anything to do with her various protected characteristics. The Complaint only restates the standard by attributing the disciplinary charges to discrimination in a conclusory fashion. And being told that "no one likes her" has no connection to gender, race, or disability.

Even under the NYCHRL's more liberal construction, see, e.g., Watson v. Emblem Health Servs., 69 N.Y.S.3d 595, 598 (N.Y. App. Div. 2018), Lawtone-Bowles draws no plausible connection between these alleged adverse actions and her gender, race, or disability. Therefore, her discrimination claims are dismissed.

III. Hostile Work Environment Claims

The standard for demonstrating a hostile work environment is the same under Title VII, the ADA, the Rehabilitation Act, and the NYSHRL. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (Title VII and the NYSHRL); Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000) (ADA and Rehabilitation Act).

"[W]hile a plaintiff need not allege specific facts establishing a prima facie case [of a hostile work environment] . . . to withstand a motion to dismiss, the elements of a prima facie case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible." Kleinman v. Fashion Inst. of Tech., 2017 WL 3016940, at *11 (S.D.N.Y. July 14, 2017). To that end, a court must consider whether the complained-of conduct "(1) is objectively severe—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane, 508 F.3d at 113. Isolated incidents or "episodic" stray remarks are not "sufficiently continuous and concerted in order to be deemed pervasive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (citation and quotation mark omitted).

6

Lawtone-Bowles alleges little more than a few stray remarks. "Big Daddy" and "cabbage patch baby" bear no facial connection to any protected characteristic. Rubin v. Abbott Labs., 2015 WL 5679644, at *8 (S.D.N.Y. Sept. 23, 2015). A single excited utterance of the pejorative term "black bitch" and a lone characterization of Lawtone-Bowles as a "nasty woman" are "mere offensive utterance[s]" insufficient to state a claim. See LaSalle v. City of N.Y., 2015 WL 1442376, at *7 (S.D.N.Y. Mar. 30, 2015) (dismissing hostile work environment claim as insufficient where supervisors habitually used "bitch" and other sexist names toward plaintiff); see also Jowers v. Family Dollar Stores, Inc., 2010 WL 3528978, at *4 (S.D.N.Y. Aug. 16, 2010). By the same token, her supervisors' skeptical comments about her disability are insufficient to state a claim. The only remaining allegation—that her PATH supervisor and co-workers harassed her for "being a woman and disabled"—is too vague to withstand a motion to dismiss. Because none of these incidents, either individually or in the aggregate, amount to a hostile work environment based on any one of her protected characteristics, her federal and state hostile work environment claims are dismissed.

The NYCHRL provides a more lenient standard, requiring only that a plaintiff demonstrate that "[she] has been treated less well than other employees because of [her] [protected characteristics]." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc,, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)). Even at this early stage, however, the reference to only one or two isolated remarks about her race, gender, or disability amounts to no more than "sporadic insensitive comment[s]." Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 593 (S.D.N.Y. 2011). Thus, her NYCHRL claim is also dismissed.

IV.     Retaliation Claims

The general framework for gender and disability-based retaliation claims is the same under federal and state law. Littlejohn v. City of N.Y., 795 F.3d 297, 307 (2d Cir. 2015) (gender); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (disability).

In this context, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants . . . took an adverse employment action . . . against [her]; (2) because [she] [engaged in a protected activity]." Vega, 801 F.3d at 90. The plaintiff must only show that "[the action taken] might have dissuaded a reasonable worker from making or supporting a charge of discrimination [or another protected activity]." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The requisite causal connection may be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn, 795 F.3d at 319 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

First, Lawtone-Bowles alleges that DHS retaliated against her by transferring her to a Brooklyn facility after she requested an accommodation. An accommodation request made in good faith is a protected activity. See Atencio v. U.S. Postal Serv., 198 F. Supp. 3d 340, 362 (S.D.N.Y. 2016) (collecting cases). But as discussed earlier, a purely lateral transfer, without any punitive implications, is not an adverse employment action. Kessler, 461 F.3d at 204. Importantly, Lawtone-Bowles does not allege that DHS had any knowledge that the transfer to Brooklyn would interfere with her physical therapy, and after she complained, DHS reassigned

8

her to PATH in the Bronx.  As a result, the Complaint demonstrates no reason why this non-punitive transfer would discourage a reasonable person from engaging in a protected activity.

Second, Lawtone-Bowles alleges that DHS retaliated against her by failing to promote her to a supervisor position.  However, the Complaint only alleges that she was denied a promotion because an unnamed person told her that "no one likes her."  (Pl.'s Resp. at 5.)  This fact alone does not suggest that the failure to promote had anything to do with her EEOC complaints or that she was "rejected under circumstances which give rise to an inference of [retaliation]."  Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009).

Finally, Lawtone-Bowles argues that DHS retaliated against her by pursuing disciplinary actions.  Construing her Complaint generously, Lawtone-Bowles appears to allege that the discipline stemming from her September 2016 altercation with an unruly passenger was prompted by her June 2015 EEOC complaint.  However, the fifteen-month gap between these events belies any causal connection.  See, e.g., Raymond v. City of N.Y., 317 F. Supp. 3d 746, 769 (S.D.N.Y. 2018) (collecting cases) (holding that a 9-month gap between protected activity and adverse action is too remote to infer causation).

As for the disciplinary charges against Lawtone-Bowles in late 2017, the allegations simply do not support an inference of retaliation.  The April 2018 disciplinary hearing stemming from her September 2017 incident and other "minor infractions" took place over eight months after her first EEOC complaint, which belies a temporal connection.  See Raymond, 317 F. Supp. 3d at 769.  Moreover, her disciplinary record, appended to the Complaint, reveals a pattern of unprofessional conduct and violations dating back to 2016, well before her 2017 EEOC grievances.  And where the pleadings reveal "adverse [disciplinary] actions [that] were both part, and the ultimate product, of an extensive period of progressive

discipline" that began before any protected activity, the Court will not infer retaliatory animus based on temporal proximity alone. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

Lawtone-Bowles also alleges disparate treatment. Specifically, Lawtone-Bowles alleges that (1) her co-worker was not reprimanded for removing a family from his van; (2) two other co-workers were not suspended after threatening to kill each other; and (3) the police officer from the September 2017 van incident was not disciplined. (Pl.'s Memo. at 4–5.) However, vague allegations that her male co-workers were not punished for alleged infractions do not suggest "a reasonably close resemblance of facts and circumstances of plaintiff's and comparator's cases" and thus do not permit an inference of retaliation. Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). For all of these reasons, her federal and state retaliation claims are dismissed.

Once again, the NYCHRL is afforded a more liberal construction, as it protects employees who "oppose any practice forbidden under the law" from "conduct reasonably likely to deter a person engaging in such action." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 39, 76 (2d Cir. 2015) (citing N.Y.C. Admin. Code § 8-107(7)). The plaintiff must show that she "took an action opposing her employer's discrimination" and that, as a result, the employer then "engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (quoting Albunio v. City of N.Y., 922 N.Y.S.2d 244, 246 (2011), and Williams, 872 N.Y.S.2d at 33–34). However, for the same reasons explained above, Lawtone-Bowles does not plausibly allege that her disciplinary actions and lack of promotion, with no apparent link to her EEOC complaints, were rooted in retaliatory motives. And she pleads no

facts suggesting that a facially neutral transfer, following six months of sick leave, was at all reasonably likely to deter protected activity. Thus, her NYCHRL retaliation claim is dismissed.

V.   Failure to Accommodate Claims

Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL. See Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999); Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 405–06 (S.D.N.Y. 2017). An employer is liable for a failure to accommodate if: "(1) [the] plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan v. City of N.Y., 711 F.3d 120, 125–26 (2d Cir. 2013).

Construing her Complaint and supporting papers generously, Lawtone-Bowles alleges that she was disabled from her knee injuries, that DHS summarily rejected her requests for "light duty," that she could have performed her job with certain accommodations, and that DHS did not fully account for her needs until March 2018—nearly three years after she asked for an accommodation. (Compl. ¶ 13; Pl.'s Resp. at 4; Pl.'s Letter.) At the motion to dismiss stage, "[a]n accommodation is reasonable . . . if it seems reasonable on its face, i.e. ordinarily or in the run of cases; this means it is reasonable if it appears to be feasible or plausible." Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 581 (S.D.N.Y. 2008) (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 423 (2002)). Bearing on the reasonableness of her request, Lawtone-Bowles alleges: (1) that at least one other motor vehicle operator was given desk duty for a period of time for reasons unrelated to a disability; (2) DHS used vehicles that complied with her specifications—she simply was not assigned to them; and (3) her supervisors denied

11

knowledge of her disability and refused to respect it. (Compl. ¶¶ 21, 27; Pl.'s Resp., at 2.) And while DHS allowed her to return to work following her car accident, she alleges that the agency ignored her requests for accommodation.

Ultimately, a factual determination on the feasibility of "light duty"—specifically, whether it was reasonable and how it would have impacted the "essential functions" of her job—is more appropriate at the summary judgment stage. See Noll v. Int'l Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a fact specific question that often must be resolved by a factfinder."); see also McBride v. Bic Consumer Prods. Mfg. Co., 583 F.3d 92, 97–98 (2d Cir. 2009) (conducting a more searching inquiry of plaintiff's prima facie case based on a full summary judgment record).

At this early stage in the litigation, a pro se complaint must be given the benefit of the doubt, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Complaint sets forth sufficient facts to plausibly suggest that DHS personnel could have taken action to accommodate Lawtone-Bowles's disability and simply failed to do so. Thus, the City's motion to dismiss Lawtone-Bowles's failure to accommodate claims is denied.

VI. Section 1981 Claim

There is no private right of action for race discrimination against state actors and municipalities under § 1981. Duplan v. City of N.Y., 888 F.3d 612, 621 (2d Cir. 2018.) Even if construed as a claim under 42 U.S.C. § 1983, the Complaint contains no facts suggesting that any alleged race discrimination occurred "pursuant to a municipal policy or custom." Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Nor does Lawtone-Bowles allege that the relevant city officials were anything other than "non-policymaking municipal employees," which

does not suffice for municipal liability.  Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012).  Accordingly, Lawtone-Bowles's § 1981 claim is dismissed.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss is granted as to Lawtone-Bowles's federal, state, and city law claims for discrimination, hostile work environment, and retaliation.  These claims are dismissed with prejudice, as this Court previously informed Lawtone-Bowles during pre-motion proceedings that leave to replead would not be permitted if this Court granted the City's motion.[2]  (May 21, 2018 Oral Arg. Tr., at 13:8–10.)  The City's motion to dismiss is denied as to Lawtone-Bowles's failure to accommodate claims.

The parties are directed to appear for a status conference on March 27, 2019 at 10:00 a.m. in Courtroom 20B.

The Clerk of Court is directed to terminate the motion pending at ECF No. 35 and to mail a copy of this Opinion & Order to Lawtone-Bowles.

Dated: February 15, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[2]  See DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 556–57 (S.D.N.Y. 2018) (citation and quotation marks omitted) ("Courts have dismissed claims with prejudice on the basis that the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

13